**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **SHERI A. MITCHELL** | ) | **Case No. 16-33067** |
| | ) | |
| | ) | **Chapter 7** |
| **Debtor** | ) | |
| | ) | |
| _____ ) | | |
| | ) | |
| **TAVADIA ENTERPRISES, INC.** | ) | |
| **and BEHRAM TAVADIA** | ) | **Adv. No. 16-03075** |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **V.** | ) | |
| | ) | |
| **SHERI A. MITCHELL** | ) | |
| | ) | |
| **Defendant** | ) | |
| _____ ) | | |

* * * * *

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on the Motion for Summary Judgment of the Plaintiffs,
Tavadia Enterprises, Inc. ("TEI") and Behram Tavadia ("Tavadia," and together, "Plaintiffs"),
and on Plaintiffs' prior Motion to Determine Nondischargeability of Debt. Plaintiffs seek to deny
a discharge from Sheri A. Mitchell ("Mitchell"), the defendant in this adversary proceeding and
debtor in the underlying bankruptcy case, for debts owed to them under a State Court judgment
against Mitchell finding her liable for fraud in connection with business loans Plaintiffs lent her.
Plaintiffs seek to deny discharge of this debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), which

denies discharge of any debt obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition," and §§ 523(a)(4) and 523(a)(6), which deny discharge of debts incurred by fraud or defalcation while acting in a fiduciary capacity, embezzlement and larceny; and by willful and malicious injury of the debtor, respectively.[1]

The Court has jurisdiction over this adversary proceeding pursuant to Section 523 of the Bankruptcy Code and 28 U.S.C. § 1334. This case is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 157(b)(2)(J). For the reasons set forth below, the Court finds that the January 31, 2019 Jefferson Circuit Court judgment against Mitchell did not decide the same issues as those raised by Plaintiffs' claims under the Bankruptcy Code, and so Plaintiffs have not proved those claims by way of issue preclusion and their Motion for Summary Judgment is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court will note at the outset that much of the factual background recited in this opinion has been incorporated from the findings of the Jefferson Circuit Court and the Kentucky Court of Appeals in their respective decisions about the same transactions and circumstances that form the basis of this adversary proceeding. *See Tavadia v. Mitchell*, 564 S.W.3d 322, 329 (Ky. Ct. App. 2018) (*reviewing* The Circuit Court, Jefferson County, Mary M. Shaw, J., *NO. 15-CI-005387*). The dispute arose out of a business agreement between Plaintiffs and Defendant,

---

[1] In their Complaint that initiated this adversary proceeding, Plaintiffs also listed § 523(a)(2)(B) as a basis for relief. In their subsequent Motion for Summary Judgment that is the subject of this opinion, however, Plaintiffs did not press any claim based upon that section and appear to have abandoned it, so the Court will not analyze it here.

whereby Plaintiffs lent money to Mitchell's business called One Sustainable Method Recycling, LLC ("OSM"). Plaintiffs lent $40,000 to OSM in June 2013, an additional $12,000 in the fall of 2014, and another $250,000 in February 2015 pursuant to a loan agreement that was signed at that time (the "2015 Agreement"). The parties agreed that Tavadia would be repaid $1000 per month, and, in the 2015 Agreement, that Tavadia would receive a 25% ownership in OSM and 25% of its net monthly profits. Tavadia also helped OSM secure an additional $150,000 loan from Louisville's Metropolitan Business Development Corporation ("METCO") by agreeing to act as a personal guarantor for the METCO loan to OSM.

Despite receiving these loans, OSM's financial condition deteriorated. Between April 2014 and September 2015, OSM incurred $14,540 in overdraft charges on its bank account, had not paid off its loans from Plaintiffs, and had not realized any profits. In August 2015, OSM obtained a $20,000 loan from Fundworks, LLC. Mitchell caused OSM to obtain this loan by signing the loan application and a personal guaranty with both her signature and Tavadia's signature. By October 2015, OSM had ceased operations and Mitchell sold some of OSM's equipment for a total of $46,899. Of that, $24,929 went into Mitchell's personal bank account and $21,970 went into OSM's account.

On October 21, 2015, Tavadia filed an action in the Jefferson Circuit Court against OSM and Mitchell, asserting claims for breach of contract, breach of fiduciary duty, misappropriation and conversion of company assets, and failure to allow access to company records. Tavadia later amended his complaint to add claims for fraud, pointing to bank record evidence showing Mitchell had paid for extravagant personal expenses such as massages, yoga and gym memberships, and jewelry out of OSM's bank account. The fraud claim also included forgery,

3

stemming from Mitchell signing Tavadia's name on the Fundworks loan application and personal guaranty.

On October 7, 2016, Mitchell filed a voluntary petition for Chapter 7 bankruptcy relief in this Court. On October 19, Plaintiffs filed their Complaint with this Court, giving rise to this adversary proceeding. Because the Jefferson Circuit Court action was still pending at that time and dealt with issues parallel to this adversary proceeding, the parties tendered an Agreed Motion for Relief from Stay to allow the Jefferson Circuit Court action to continue, and this Court entered an Order granting that motion on December 13, 2016.

The Jefferson Circuit Court conducted a bench trial in its case on May 26, 2017. On August 4, 2017, the Circuit Court entered an opinion and order dismissing all claims against Mitchell. Tavadia appealed that opinion to the Kentucky Court of Appeals. A trial was held in that appeal on October 19, 2018, and the Court of Appeals reversed the order of the Circuit Court in an opinion titled *Tavadia v. Mitchell*, 564 S.W.3d 322 (Ky. Ct. App. 2018). In its reversing opinion, the Court of Appeals afforded the Jefferson Circuit Court "the deference due the trial court's factual findings," and analyzed the Circuit Court's legal conclusions *de novo*, pursuant to Kentucky law. *Id.* at 326. The Court of Appeals found that the Circuit Court erred in denying Plaintiffs' claims against Mitchell, and remanded the matter to the Circuit Court for further proceedings consistent with its opinion.

On January 31, 2019, the Jefferson Circuit Court entered a Final Judgement in favor of Plaintiffs and against Mitchell. Consistent with the factual findings from its initial bench trial and the Kentucky Court of Appeals' conclusions of law based on those findings, the Circuit Court held that Mitchell committed fraud against Plaintiffs, forged Tavadia's signature to obtain the

4

Fundworks loan, and misappropriated funds from OSM. As such, it granted judgment in favor of Plaintiffs for the following:

1. The unpaid principal amount of $302,000.00 on the Loan Agreements;
2. Late fees pursuant to the Loan Agreements in the amount of $850.00;
3. Fraud damages in the amount of $100,000.00;
4. Pre-judgment interest on the principal sum of $302,000.00 at the contractual rate of six percent (6%) per annum;
5. Reasonable attorney's fees and costs in the amount of $93,009.79;
6. Punitive damages in the amount of $100,000.00; and
7. Post judgment interest at the rate of 6% per annum on the entire amount of the Judgment from the date of Judgment until paid in full.

Having resolved the state law cases as intended by this Court's prior Order granting relief from the automatic stay, Plaintiffs filed a Motion to Determine Nondischargeability of Debt with this Court on December 9, 2019. On January 16, 2020, Plaintiffs filed a Motion for Summary Judgment. On February 10, Mitchell filed a motion to extend the time to respond to the Motion for Summary Judgment, and on February 13, Mitchell's counsel filed a Motion to Withdraw as Attorney, which the Court granted. Mitchell was given 60 days to obtain new counsel. Those 60 days expired on April 23, 2020, without Mitchell obtaining any new counsel, filing a response to the Motion for Summary Judgment, or making any other filing or representation to the Court. A hearing was held on the Motion for Summary Judgment on May 6, 2020, and the Motion for Summary Judgment was taken under submission and is now ripe for adjudication.

## PLAINTIFFS' MOTION TO DETERMINE NONDISCHARGEABILITY

The dischargeability of a debt in bankruptcy is an issue that must be determined in an adversary proceeding, not through motion practice. Fed. R. Bankr. P. 7001(4), (6). As such,

Plaintiffs' December 9, 2019 motion is an improper instrument for their nondischargeability claims, and that motion is dismissed. The plaintiffs' later Motion for Summary Judgment is an appropriate way to bring their nondischargeability claims, and so the Court has taken that Motion under submission and will consider it here.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the Court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997).

In determining the existence or nonexistence of a material fact, a court will view the evidence in a light most favorable to the nonmoving party. *Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996). Absent such evidence from the nonmoving party, the Court need not comb the entire record to determine if any of the available evidence could be construed in such a light. *See In re Morris*, 260 F.3d 654, 665 (6th

Cir. 2001) (holding that the "trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact").

## DISCUSSION

Plaintiffs seek to have the debt owed by Mitchell deemed nondischargeable and hence not covered by the discharge Mitchell received on January 18, 2017 in her underlying Chapter 7 bankruptcy. They point to the Kentucky Court of Appeals opinion and the Final Judgment entered by the Jefferson Circuit Court as the bases for having proved the claims in their Motion for Summary Judgment, and also argue that Kentucky law bars these claims from being relitigated in Bankruptcy Court under the doctrine of issue preclusion.

A federal court deciding whether to apply issue preclusion to an earlier state court judgment must first examine the issue preclusion law of the state in which the judgment was rendered. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 375 (1985)). Here, that is Kentucky law. For Plaintiffs to prevail on their Motion for Summary Judgment, they must satisfy the following elements of issue preclusion under Kentucky law:

> An earlier case only bars subsequent litigation over issues that (1) are the same as the issues now presented, (2) were actually litigated, (3) were actually decided, and (4) were necessary to the prior court's judgment.... [B]efore issue preclusion will stick against a current defendant who lost earlier ... [t]wo further elements must be met: (5) the defendant must have had a "realistically full and fair opportunity to litigate the issue," and (6) preclusion must be consistent with "principles of justice and fairness."

*In re Nageleisen*, 523 B.R. 522, 528 (Bankr. E.D. Ky. 2014) (*citing Columbia Gas Transmission, LLC v. Raven Co., Inc.*, 2014 WL 2711943, at *4 (E.D.Ky. June 13, 2014)). To meet the first

element of issue preclusion and prove that the issues before this Court are the same as those previously litigated, Plaintiffs must show that the State Court decisions satisfy the elements of their claims under the Bankruptcy Code. *In re Berge*, 953 F.3d 907, 917 (6th Cir. 2020). For the reasons set forth below, the Court finds that issue preclusion does not cause the State Court decisions to satisfy the elements of any of the claims pressed by Plaintiffs in their Motion for Summary Judgment, because those claims do not present the "same issues" as those decided in State Court.

### § 523(a)(2)(A)

Plaintiffs contend that Mitchell's misconduct constitutes fraud under 11 U.S.C. § 523(a)(2)(A), which provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...

To succeed on any claim made under § 523(a), a plaintiff must prove by a preponderance of the evidence each element to support a determination that a debt is non-dischargeable. *In re Layne*, 517 B.R. 778, 781 (Bankr. E.D. Ky. 2014). All exceptions to discharge are construed against the creditor. *Manufacturer's Hanover Trust v. Ward* (*In re Ward*), 857 F.2d 1082, 1083 (6th Cir. 1988). A finding of fraud such that the resulting debt is nondischargeable under § 523(a)(2)(A) requires proof of the following elements by a preponderance of the evidence:

(1) the debtor obtained money through a material misrepresentation, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.1998). Plaintiffs must show that these elements have been satisfied by the State Court decisions for issue preclusion to apply and entitle them to a ruling of nondischargeability on summary judgment in this Court. Having carefully examined those decisions, this Court finds that the requirements of § 523(a)(2)(A) have not been met for any part of the judgment awarded to Plaintiffs in State Court.

The Court will first examine the judgment and damages awarded to Plaintiffs on the $302,000 in unpaid loans, and the associated late fees and pre-judgment interest payments. In its reviewing decision, the Kentucky Court of Appeals said it was "of the opinion that the record supports Tavadia's claim that Mitchell's fraudulent misrepresentations induced him to enter into the second loan agreement." *Tavadia v. Mitchell*, 564 S.W.3d at 331. Plaintiffs emphasized this in their Motion for Summary Judgment, saying Tavadia had "agreed to loan OSM money" only because Mitchell had produced documentation falsely showing that OSM was making money, covering expenses, and current on its lease obligation. In the above-quoted statement, the Kentucky Court of Appeals was referring to the 2015 Agreement whereby Plaintiffs lent an additional $250,000 to OSM, after having already lent $40,000 in 2013 and $12,000 in 2014. Indeed, the Circuit Court ruled, and the Court of Appeals said it was "inclined to agree[,…] that Tavadia *initially* loaned OSM money based on his friendship with Mitchell" rather than any misinformation tendered by her. *Id.* (emphasis added). In other words, the Court of Appeals found that Mitchell fraudulently induced Tavadia to loan the later $250,000 loan in 2015, but not

the earlier $40,000 and $12,000 loans. Thus, to the extent the State Court decisions can preclusively prove Plaintiffs' § 523(a) claims by nature of Mitchell's fraudulent misrepresentation of OSM's financial condition, they could only prove it with respect to the $250,000 loaned under the 2015 Agreement, because that is the only loan the Court of Appeals held was induced by Mitchell's misleading documents.

In fact, this specific finding from the Court of Appeals decision does not prove Plaintiffs' § 523(a)(2)(A) claim at all, precisely because the highlighted misrepresentation by Mitchell that induced Plaintiffs to lend money *did* pertain to OSM's financial condition, and, by extension, Mitchell's own financial condition. Section 523(a)(2)(A) exempts debts from discharge if they were obtained by fraudulent means "*other than* a statement respecting the debtor's or an insider's financial condition" (emphasis added). Therefore, § 523(a)(2)(A) does not affect Mitchell's discharge insofar as she used misrepresentation of her financial condition to induce the $250,000 loan from the 2015 Agreement, because § 523(a)(2)(A) explicitly does not apply to that circumstance.[2]

This is not to say that the State Court decisions did not involve findings of misconduct on Mitchell's part. They certainly did, such as the findings that Mitchell spent loan funds on extravagant personal expenses and commingled proceeds from the sale of equipment with her personal bank account. These findings, however, do not establish that any of the loans to OSM

---

[2] The Bankruptcy Code creates two mutually exclusive criteria for cases involving fraudulently induced loans, and § 523(a)(2)(B) is the section that applies to cases where the alleged fraud *did* involve the debtor's or an insider's financial condition. That section also carries additional proof requirements: the statement about the debtor's financial condition must have been in writing, it must have been "materially false," the creditor must have reasonably relied on it, and the debtor must have intended to deceive by publishing the written misinformation or causing it to be published. *In re French*, 563 B.R. 212, 221 (Bankr. W.D. Ky. 2016). As mentioned, Plaintiffs' Motion for Summary Judgment did not present any arguments or discuss in detail any claim based on § 523(a)(2)(B), and so they have not proved the elements of that section or shown that the State Court decisions have preclusively proved them.

were "obtained by" fraud, as required by § 523(a)(2)(A) – these findings go to conduct that occurred *after* the loans had been extended. *See In re Alexakis*, No. 10-37871, 2012 WL 10716047, at *5 (Bankr. S.D. Ohio Sept. 6, 2012) ("[m]isrepresentations made subsequent to the creation of the debt have no effect upon dischargeability of a debt, since the false representation did not cause the creditor to part with money, property or services"). Because the commingling and improper spending occurred after the loans were extended, this conduct does not fall under § 523(a)(2)(A), and hence the State Courts' finding that Mitchell was liable for it was not a finding of the "same issue" as nondischargeable fraud under § 523(a)(2)(A).

The Court of Appeals also found that Mitchell forged Tavadia's signature on a loan and personal guaranty in order to obtain additional funding from Fundworks. While it is true that Mitchell used fraudulent means – forging Tavadia's signature – to obtain the Fundworks loan, the unpaid balance of that loan is not part of the unpaid loan damages from the Circuit Court's judgment, which only covers the amount that *Plaintiffs* lent. Plaintiffs did not lend the fraudulently obtained Fundworks funds, and so, as the Circuit Court pointed out, Plaintiffs have not shown any damages from Mitchell's forgery of Tavadia's signature in obtaining the Fundworks loan.[3] *Tavadia v.* Mitchell, 564 S.W.3d at 326.

---

[3] As of the Court of Appeals' opinion, Fundworks had not yet attempted to collect from Tavadia on its loan.

While the Court of Appeals held that the forgery was fraudulent in and of itself and should have been considered for nominal and potential punitive damages, the damages eventually awarded did not specify an amount that can be attributed to the forgery. Aside from those associated with the unpaid loan, the other damages listed were $100,000 in unspecified "fraud damages," another $100,000 in unspecified punitive damages, attorney's fees, and post-judgment interest. In examining these awards, this Court cannot attribute any of them to the forgery specifically.[4] As such, issue preclusion does not apply to Plaintiffs' award with respect to Mitchell's forgery. *In re Henkel*, 490 B.R. 759, 783 (Bankr. S.D. Ohio 2013) (denying summary judgment on a § 523(a)(2)(A) claim because the relied-upon state court judgment lacked the specificity needed for the bankruptcy court "to determine the extent of the State Court's findings of fraud or the amount of damages attributed to such fraud"); *see also In re Panos*, 573 B.R. 723, 736 (Bankr. S.D. Ohio 2017) (issue preclusion did not apply to a prior state court judgment because "neither the jury nor the State Court specifically allocated any portion of the damages award directly" to fraud, and other non-fraud liability was included in the verdict).

None of Mitchell's fraudulent conduct described by the Court of Appeals, nor the damages awarded by the Circuit Court, can be shown to be decided on the "same issue" as Plaintiff's claim under § 523(a)(2)(A). Because the first element of issue preclusion has not been met, the Court need not analyze the remaining elements to find that issue preclusion does not act to prove Plaintiffs' § 523(a)(2)(A) claim.

---

[4] Furthermore, because the forgery fraud did not lead to any funds being loaned *by Plaintiffs*, any award for damages that could be attributed to the forgery would probably need to be analyzed for nondischargeability under § 523(a)(6) as a willful and malicious injury rather than § 523(a)(2)(A). *See Grogan v. Garner*, 498 U.S. 279, 282 fn. 2 (1991) ("Arguably, fraud judgments in cases in which the defendant did not obtain money, property, or services *from the plaintiffs* and those judgments that include punitive damages awards are more appropriately governed by § 523(a)(6)") (emphasis added). As discussed below, none of the damages from the Circuit Court's judgment qualify for nondischargeability under § 523(a)(6), because neither the Circuit Court nor the Court of Appeals established or discussed Mitchell's intent in their decisions, and § 523(a)(6) carries a strict intent requirement.

Plaintiffs also argue that the State Court decisions have proved their claims under §§ 523(a)(4) and 523(a)(6) and that those claims are issue precluded from being litigated again in this Court.

## § 523(a)(4)

Plaintiffs include a claim under § 523(a)(4) in their Motion for Summary Judgment. That section provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual Defendant from any debt –
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;…

Section 523(a)(4), therefore, provides three categories of debts that are not dischargeable in bankruptcy: first, debts arising from fraud or defalcation while acting in a fiduciary capacity; second, debts from the commission of embezzlement; and third, debts from larceny. Plaintiffs did not analyze any of these specific categories in their Motion for Summary Judgment, but did posit that § 523(a)(4) acts to make the Final Judgment nondischargeable. The Court will therefore analyze each of the three categories as they apply to Mitchell's conduct.

In the Sixth Circuit, the "fiduciary capacity" provision of § 523(a)(4) has been construed very narrowly, requiring the existence of an "express trust" or "technical trust." *In re Patel*, 565 F.3d 963, 968 (6th Cir. 2009). To establish that a debtor acted in a "fiduciary capacity" under § 523(a)(4), a creditor must prove four elements to show the existence of an express or technical trust under Kentucky law: (1) an express intent to create a trust; (2) an ascertainable res; (3) a sufficiently certain beneficiary; and (4) a trustee who administers the trust for the beneficiary. *In re Grant*, 325 B.R. 728, 734 (Bankr. W.D. Ky. 2005). None of these factors have been met here,

13

so Plaintiffs have not established an express or technical trust, and § 523(a)(4)'s "fiduciary capacity" provision does not apply.

The remaining categories of nondischargeable debt under § 523(a)(4) are embezzlement and larceny. Federal common law defines embezzlement under § 523(a)(4), and requires two elements: (1) the debtor was lawfully entrusted with property, or property lawfully came into the hands of the debtor; and (2) the debtor fraudulently appropriated the property. *In re Grim*, 293 B.R. 156, 166 n. 3 (Bankr. N.D. Ohio 2003) (*citing In re Davis*, 262 B.R. 663, 671 (Bankr.E.D.Va.2001)). Larceny, on the other hand, is defined by federal common law as the fraudulent and wrongful taking of the property of another with intent to convert such property to the taker's use without the consent of the owner. 293 B.R. at 166 n. 3 (*citing In re Zanetti–Gierke*, 212 B.R. 375, 381 (Bankr.D.Kan.1997). Larceny differs from embezzlement in that, with embezzlement, the original taking of the property was lawful, whereas with larceny, "the felonious intent must have existed at the time of taking." *In re Burk*, 583 B.R. 655, 671 (Bankr. N.D. Miss. 2018) (*quoting Moore v. United States*, 160 U.S. 268, 270 (1895)).

Because a finding of larceny requires a taking of property that was unlawful when it occurred, the larceny provision of § 523(a)(4) does not apply here. When the Kentucky Court of Appeals found that Mitchell mistreated or misappropriated funds, it focused on conduct that occurred after Plaintiffs lent money to Mitchell, i.e., purchasing extravagant items and commingling sale funds. The initial "taking" of those funds by Mitchell occurred when Tavadia loaned them to her and was not unlawful, so larceny did not occur and that category of § 523(a)(4) is inapplicable.

That leaves only embezzlement as a potential category of nondischargeable debt under § 523(a)(4). To prove their embezzlement claim, Plaintiffs must show that the money loaned to Mitchell was "entrusted" to her. However, merely loaning or investing funds with a debtor is generally insufficient to establish that funds were "entrusted" to that debtor for the purposes of a § 523(a)(4) embezzlement claim. *See, e.g., In re Algire*, 430 B.R. 817, 822 (Bankr. S.D. Ohio 2010) (misuse of loaned funds did not support an embezzlement claim because "at the time Plaintiff funded the loan, loan proceeds ceased being Plaintiff's property; rather, at that moment, the loan proceeds became [the debtor's] property"); *In re Barbee*, 479 B.R. 193, 208 (Bankr. S.D. Ga. 2012) (similar); *In re Clayton*, 198 B.R. 878, 885 (Bankr. E.D. Penn. 1996) (denying a claim for embezzlement by a creditor of a closely held corporation based on allegations that the debtor had misused funds from the corporation).

The Court sees no reason to depart from this widespread approach here, particularly when Plaintiffs' claim for embezzlement suffers from a lack of specificity about how Mitchell's conduct constituted embezzlement and how the damages accounted for it, both in their Motion for Summary Judgment and in the State Court decisions on which they rely. Because Plaintiffs have not shown that their property was "entrusted" with Mitchell, § 523(a)(4) does not apply to her conduct as described by the State Courts, and issue preclusion does not apply.

Having examined all three categories of § 523(a)(4) and found that the State Court decisions have not preclusively proved a claim under any of them, the Court now turns to the Plaintiffs' final claim on summary judgment, under § 523(a)(6).

**§ 523(a)(6)**

Plaintiffs seek to have their judgment from the Circuit Court deemed nondischargeable under § 523(a)(6). That section provides:

> (b) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual Defendant from any debt –
> (6) for willful and malicious injury by the Defendant to another entity or to the property of another entity.

In the Sixth Circuit, "willful injury" and "malicious injury" are separate elements that must both be met for the discharge exception to apply. *In re Berge*, 953 F.3d at 914 (6th Cir. 2020) (explicitly adopting the two-pronged "willful" and "malicious" test in the Sixth Circuit). A "willful" injury stems from conduct by which a defendant intended "the consequences of an act, not simply the act itself." *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, (1998).

After the Supreme Court issued *Geiger*, the Sixth Circuit decided *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999), holding that a willful injury occurs when the Defendant "desires to cause the consequences of his act, or ... believes that the consequences are substantially certain to result from it." *Id.* As the Sixth Circuit Bankruptcy Appellate Panel has explained,

> "this is a subjective standard… It does not matter if a reasonable, objective person would have been aware of the consequences of his or her action; if the Defendant did not subjectively intend those consequences or was not subjectively aware that the consequences were substantially certain to occur then the Defendant's action was not willful. The Defendant, however, need not intend or anticipate the precise nature of the injuries suffered, only that injury would ensue from his acts."

*In re Boland*, 596 B.R. 532, 545 (B.A.P. 6th Cir. 2019) (internal citations omitted). Therefore, in arguing that the State Court decisions have preclusively proved their § 523(a)(6) claim, Plaintiffs must show that the State Courts found Mitchell acted with the intent to injure them. "Negligent

or reckless acts ... do not suffice to establish that a resulting injury is willful and malicious." *Geiger*, 523 U.S. at 64.

Unfortunately for Plaintiffs, the State Court decisions on which they rely did not rule on or even discuss the intent behind Mitchell's conduct or her mental state, so those decisions cannot preclusively satisfy the intent requirement of § 523(a)(6). Nor can it be said that a determination of Mitchell's mental state was essential to the Court of Appeals' reversal or the Circuit Court's resulting Final Judgment, because those decisions did not cite to any specific Kentucky statute that Mitchell violated, and so this Court cannot examine such a statute to see whether violation of it requires a finding of intent that could satisfy § 523(a)(6).

This situation, therefore, is entirely different from those where a state court judgment involved a determination of the debtor-defendant's mental state such that the reviewing bankruptcy court could find that the judgment satisfied the intent requirement of § 523(a)(6). For example, in *In re Couch*, 544 B.R. 867, 875 (2016), aff'd, No. 16-8009, 2017 WL 444644 (B.A.P. 6th Cir. Feb. 2, 2017), aff'd, 704 F. App'x 569 (6th Cir. 2017), the Bankruptcy Court for the Eastern District of Kentucky applied issue preclusion to find a prior state court judgment nondischargeable and, in doing so, noted that "[t]he state court specifically held that Couch engaged in 'intentional, willful, and malicious conduct ...' and such intentional, willful and malicious conduct 'caused injury and damages to the Plaintiff.'" This is precisely the type of finding that is missing from the Jefferson Circuit Court and Kentucky Court of Appeals decisions.

Instead, the situation much more closely resembles one that was recently before the Sixth Circuit Court of Appeals in *In re Berge*, 953 F.3d 907, 921 (6th Cir. 2020). There, the plaintiff

17

sought to apply issue preclusion to a prior District Court judgment for copyright infringement and hold it nondischargeable under § 523(a)(6). In upholding the Bankruptcy Court's denial of summary judgment, the Sixth Circuit explained that because copyright infringement liability "can be predicated upon merely reckless behavior, a copyright-infringement judgment does not necessarily prove the infringer's subjective intent to harm. For purposes of issue preclusion, [the District Court] judgment did not necessarily litigate and decide David's subjective intent." *Berge*, 953 F.3d at 921. In this case, Plaintiffs' Motion for Summary Judgment suffers the same defect: the issue of intent under § 523(a)(6) has not been adequately established by the prior decisions. *See also In re Kilmartin*, 508 B.R. 35, 42 (Bankr. W.D. Ky. 2014) (holding that issue preclusion did not apply and denying relief on summary judgment because the relied-upon prior decision made "no determination, nor even any mention, of the Defendant's mental state").

Plaintiffs also argue that the Circuit Court's award of punitive damages in its Final Judgment establishes that Mitchell committed a willful and malicious injury. To the extent this can be read as an argument that this Court should infer from the award of punitive damages that Mitchell's fraud occurred with the requisite level of intent under § 523(a)(6), this Court declines to do so. *See In re Panos*, 573 B.R. 723, 739 (Bankr. S.D. Ohio 2017) (declining to infer the requisite intent from an award of punitive damages, because those punitive damages may have been awarded based on the debtor's "ill will," a lower standard than the intent required under § 523(a)(6)). The Jefferson Circuit Court awarded the punitive damages in a default judgment on remand, during which it did not perform any detailed legal analysis or discuss Mitchell's intent. The Court of Appeals did perform a legal analysis, but it did not enter any judgment and hence was not the court that awarded the punitive damages. And even within its detailed opinion, the Court of Appeals never made any finding on whether punitive damages were appropriate, and

like the Circuit Court, it never discussed Mitchell's intent.[5] Hence, the award of punitive damages cannot be attributed to either court's understanding of the intent behind Mitchell's actions or the seriousness of her conduct, and this Court cannot use those punitive damages to conclude that the intent requirement of § 523(a)(6) has been preclusively proved.

Plaintiffs' § 523(a)(6) claim has not been issue preclusively proved by the State Court decisions. Neither the opinions themselves, nor the award of punitive damages, sufficiently establish that Mitchell acted with the requisite level of intent under § 523(a)(6) for the judgments against her to be held nondischargeable as a willful and malicious injury.

## CONCLUSION

Plaintiffs have failed to show that the State Court decisions have proved their claims under the Bankruptcy Code, or that these claims are issue precluded from being relitigated in bankruptcy court. The first element of issue preclusion under Kentucky law – that the state court judgment must have decided the "same issues" as the claims later brought in federal court – has not been met for any of Plaintiffs' claims.

Plaintiffs' § 523(a)(2)(A) claim does not present the same issues as those decided by the Court of Appeals and Circuit Court. That section excepts from discharge debts "obtained by" fraud, meaning it is not implicated by a debtor's mistreatment of funds after the debtor has already received them, such as Mitchell's extravagant purchases or commingling of sale proceeds. Plaintiffs have also failed to establish a specific amount of damages they are entitled to

---

[5] While the Court of Appeals did discuss punitive damages in its opinion, it did so in holding that the Circuit Court erred by not *considering* Plaintiffs' claim for punitive damages, which, contrary to the Circuit Court's initial ruling, can be awarded under Kentucky law even if only nominal damages are otherwise available. *Tavadia v. Mitchell*, 564 S.W.3d 322, 328 (Ky. Ct. App. 2018). The Court of Appeals gave no indication as to whether it believed Mitchell's conduct warranted an award of punitive damages.

stemming from Mitchell forging Tavadia's signature, and the Circuit Court's award of damages lacks the necessary specificity for this Court to determine what amount, if any, of Plaintiffs' "fraud damages" or punitive damages award can be attributed to that forgery.

The State Court decisions also did not address the same issues as those raised by Plaintiffs' claims under §§ 523(a)(4) or 523(a)(6). With respect to § 523(a)(4), the State Court decisions did not satisfy the "express or technical trust" requirement for a claim of fraud or defalcation while acting in a fiduciary capacity, nor the "entrustment of property" element for a claim of embezzlement; and larceny did not occur because Mitchell did not obtain funds from Plaintiffs illegally. Plaintiffs' claim under § 523(a)(6) has also not been preclusively proved by the State Court decisions, because those decisions did not address Mitchell's mental state or level of intent in performing any of her fraudulent actions, and § 523(a)(6) carries a strict intent requirement for debts to be held nondischargeable.

Therefore, Plaintiffs have failed to establish that any of their claims under the Bankruptcy Code have been proved or are issue precluded from being relitigated, and their Motion for Summary Judgment is denied. The Court will issue a separate Order incorporating the findings of this Memorandum Opinion.

Thomas H. Fulton
United States Bankruptcy Judge

Dated: June 1, 2020

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SHERI A. MITCHELL | ) | Case No. 16-33067 |
| | ) | |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | |
| _____) | ) | |
| | ) | |
| TAVADIA ENTERPRISES, INC. | ) | |
| and BEHRAM TAVADIA | ) | Adv. No. 16-03075 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| SHERI A. MITCHELL | ) | |
| | ) | |
| Defendant | ) | |
| _____) | | |

\* \* \* \* \*

## ORDER

Pursuant to the Court's Memorandum entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the Plaintiffs' Motion for Summary Judgment is denied. A pre-trial conference with the parties will be scheduled.

Thomas H. Fulton
United States Bankruptcy Judge

Dated: June 1, 2020