UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SHERI A. MITCHELL | ) | CASE NO. 16-33067(1)(7) |
| | ) | |
| Debtor(s) | ) | |
| | ) | |
| TAVADIA ENTERPRISES, INC. | ) | |
| and BEHRAM TAVADIA | ) | |
| | ) | |
| Plaintiff(s) | ) | ADV. PRO. NO. 16-3075 |
| | ) | |
| v. | ) | |
| | ) | |
| SHERI A. MITCHELL | ) | |
| | ) | |
| Defendant(s) | ) | |

## MEMORANDUM-OPINION

This matter came before the Court for trial on the Complaint to Determine Dischargeability of Debt by Plaintiffs Tavadia Enterprises, Inc. ("TEI") and Behram Tavadia ("Tavadia") (collectively "Plaintiffs") against Debtor/Defendant Sheri A. Mitchell ("Debtor"). The trial was scheduled to take place on January 25, 2022. However, on January 21, 2022, the parties filed an Agreed Order to Proceed by Brief Filing, Waiver of Parties' Right to Put on Proof at the Scheduled Trial and Other Stipulations (hereinafter the "Agreed Order"). In the Agreed Order, the parties specifically waived their right to put on proof at trial, leaving "all characterizations of the evidence to the Court's discretion." The parties limited their arguments to the Exhibits filed for trial. Each party then filed a Brief, an Affidavit and Exhibits. The Court then took the matter under submission.

**FACTUAL AND PROCEDURAL BACKGROUND**

In the 1990's, the Debtor and Tavadia met and became friends while Debtor was a passenger on a Carnival Cruise ship where Tavadia was the ship's Chief Purser. The parties remained in contact with one another off and on until 2015.

In 2013, the Debtor approached Tavadia with a business proposition. Debtor informed Tavadia of her plan to open a medical business which would contract with medical professionals in order to dispose of used plastic medical equipment. Debtor explained how the medical waste would be collected and disposed of, including recycling and reselling the material. The parties discussed the procedures, the cost involved with the start up, as well as profit margins needed to break even and to ultimately make a profit.

Initially, Debtor contributed $60,000.00 of her own funds, and another individual invested $10,000.00. In April 2013, One Sustainable Method Recycling LLC ("OSM") was formed as a Kentucky corporation.

Debtor indicated that on two occasions, Tavadia offered to finance the business and cited his previous success in investing and growing other businesses. Debtor initially declined these offers. Eventually, however, Plaintiffs and Debtor executed a Loan Agreement on June 15, 2013, wherein OSM signed a Loan Agreement with TEI, a Florida corporation owned by Tavadia, for $40,000.00. Debtor was to be in charge of the daily functions of the business and Tavadia was to be the "financial guide," while receiving 5% of the equity in OSM.

On January 28, 2014, with the assistance of Tavadia, the Debtor entered into a Loan Agreement with Metropolitan Business Development Corporation of Metro Louisville ("METCO") for $150,000.00. Tavadia pledged $60,000.00 worth of India Bonds as collateral for the loan.

Debtor states that Tavadia was fully aware of the financial condition of OSM at the time the parties entered into the METCO loan. Tavadia was also aware that a friend of the Debtor, Angelynn Rudd, had invested $25,000.00 in OSM as a bridge loan until the METCO loan was obtained. Debtor claims Tavadia was also aware that Ms. Rudd was never repaid her investment. OSM was required to file financial statements with METCO, all of which Tavadia had access to review.

In 2014, due to changes in the pricing of plastics, new plastic equipment became cheaper than the recycled product, that Debtor had been using. Debtor sought help again from Plaintiffs and advice as to how OSM could obtain further funding by investments or loans. The Debtor proposed obtaining a loan to purchase much needed equipment for a new contract. The loan Debtor was investigating meant higher monthly payments with a higher interest rate. Tavadia indicated to Debtor he could procure the loan at a lower monthly rate and a lower interest rate. Tavadia agreed to provide a $12,000.00 loan to be repaid on a short basis to cover production and labor. In return, Tavadia was to be repaid $12,500.00 by January 30, 2015. This loan was never repaid.

On February 19, 2015, OSM and TEI entered into a Loan Agreement whereby TEI memorialized all of the prior loans between the parties. *See* Exhibit 13. The Loan Agreement states at the top:

This instrument prepared by:

Global Intellectual Property Asset Management PLLC
507 S. Gay Street, Suite 910
Knoxville, TN 37902

Tel. 865-525-0848
Fax 865-525-9450
Modified by Behram Tavadia 2/12/2015

The Loan Agreement recites that OSM is the Borrower and TEI is the Lender and that the Borrower has authorization to get a loan for $150,000.00. The loan recites that Lender has given Borrower permission to obtain $150,000.00 against a pledge of a bond in the name of the Lender. The document further references the $40,000.00 loan, the $12,000.00 loan that Lender had previously loaned to Borrower and a $250,000.00 investment in capital for Borrower's operational expenses.

Plaintiffs acknowledge in their brief that on February 11, 2015, Tavadia learned that Debtor had other investors and outstanding loans. This occurred when Debtor provided Tavadia with OSM's Investors and Loan Schedules. *See* Plaintiffs' Exhibit 14. After learning this information on February 11, 2015, TEI still went through with the February 19, 2015 Loan Agreement.

Despite receiving these loans, OSM's financial condition continued to deteriorate. Between April 2014 and September 2015, OSM incurred $14,540.00 in overdraft charges on its bank account and had not paid off its loans from Plaintiffs and had not realized any profits. In August 2015, OSM obtained a $20,000.00 loan from Fundworks, LLC. Debtor caused OSM to obtain this loan by signing the Loan Application and a personal guaranty with both her signature and Tavadia's signature. Plaintiff contends that Tavadia had given her his oral agreement for her to sign the document since he was at sea on the cruise line. Tavadia disputes Debtor's statements and claims Debtor signed his name to these documents without his permission.

OSM was in dire financial straits. OSM's rent had remained unpaid and the plastics market continued to decline. Debtor sought advice again from Tavadia. Tavadia came to Louisville to inspect OSM and view the company's machinery and equipment. In September 2015, Tavadia returned to Louisville with his new wife and again inspected the OSM business. After meeting with

Debtor and Angelynn Rudd, Tavadia insisted that Debtor close the business immediately until there were sufficient funds to operate the business and pay its debts.

By October 2015, OSM had ceased operations and Debtor sold some of OSM's equipment for a total of $46,899.00. Of that, $24,929.00 went into Debtor's personal bank account and $21,970.00 went into OSM's bank account. Debtor acknowledged that she sold four pieces of unsecured machinery for approximately $46,000.00, which she used to pay four months of past rent, a company vehicle for $2,732.00, $31,474.00 in past due payroll and $12,280.52 in withholding, social security and Medicare tax payments.

The doors of OSM were closed permanently on October 1, 2015.

On October 15, 2015, Plaintiffs TEI and Tavadia filed suit against Debtor in Jefferson Circuit Court asserting claims for breach of contract, breach of fiduciary duty, misappropriation and conversion of company assets and failure to allow access to company records. The Complaint was later amended to add claims for fraud based on bank records showing Debtor had used OSM's funds to pay for personal expenses, including massages, yoga, jewelry and gym memberships.

On October 7, 2016, Debtor filed her Voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code.

On October 19, 2016, Plaintiffs filed the Complaint to Determine Dischargeability of Debt herein seeking to have the loans made to Debtor by Tavadia and TEI nondischargeable in Debtor's Chapter 7 bankruptcy. The parties entered into an Agreed Motion for Relief from Stay to allow the Jefferson Circuit Court action to proceed and this Court entered an Order granting the Motion on December 13, 2016.

The Jefferson Circuit Court conducted a bench trial on May 26, 2017. On August 4, 2017, the Jefferson Circuit Court entered an opinion dismissing all claims against the Debtor. Tavadia appealed to the Kentucky Court of Appeals. The Court of Appeals reversed the Circuit Court and remanded the matter to the Circuit Court for further proceedings.

On January 31, 2019, the Jefferson Circuit Court entered a Final Judgment in favor of Plaintiffs and against Debtor. The Circuit Court determined Debtor committed fraud against Plaintiffs, forged Tavadia's signature to obtain the Fundworks' loan and misappropriated funds from OSM. The Court granted Judgment in favor of Plaintiffs for the following:

1. The unpaid principal amount of $302,000.00 on the Loan Agreeements;
2. Late fees pursuant to the Loan Agreements in the amount of $850.00;
3. Fraud damages in the amount of $100,000.00;
4. Pre-judgment interest on the principal sum of $302,000.00 at the contractual rate of six percent (6%) per annum;
5. Reasonable attorney's fees and costs in the amount of $93,009.79;
6. Punitive damages in the amount of $100,000.00; and
7. Post judgment interest at the rate of 6% per annum on the entire amount of the Judgment from the date of Judgment until paid in full.

On February 16, 2022, this Court took the matter under submission based upon the parties' Stipulation to have the matter determined based upon the briefs of the parties, in lieu of trial.

**LEGAL ANALYSIS**

The Plaintiffs allege that the loans they entered into with Debtor and OSM are nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (B), § 523(a)(4) and § 523(a)(6). Initially, the Court notes that Plaintiff Behram Tavadia, individually, did not enter into any of the Loan Agreements with OSM. TEI is listed as the Lender and OSM is listed as the Borrower in all of the Loan Agreements at issue.

The Court also notes that although the Jefferson Circuit Court entered a final judgment in favor of the Plaintiffs, the standards for proving a nondischargeability claim in this Court are different than those used in the state court action. The Plaintiffs in this case did not articulate different arguments than those already ruled upon by Judge Fulton in his June 1, 2020 Memorandum Opinion on collateral estoppel in the state court action.

(A)     <u>Nondischargeability Claim Under 11 U.S.C. § 523(a)(2)(A)</u>.

Plaintiffs assert that Debtor's conduct constitutes fraud under 11 U.S.C. § 523(a)(2)(A), which provides:

> (a) a discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
>
>> (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by –
>>
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . .

To succeed on any claim made under § 523(a), a plaintiff must prove by a preponderance of the evidence each element to support a determination that a debt is nondischargeable. *In re Layne*, 517 B.R. 778, 781 (Bankr. E.D. Ky. 2014). A finding of fraud such that the resulting debt is nondischargeable under § 523(a)(2)(A) requires proof of the following elements by a preponderance of the evidence:

> (1) The debtor obtained money through a material misrepresentation, that, at the time, the debtor knew was false or made with gross recklessness as to its truth;
>
> (2) The debtor intended to deceive the creditor;
>
> (3) The creditor justifiably relied on the false representation; and

    (4) Its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998).

  The Plaintiffs contend that Debtor committed fraud by inducing the Plaintiffs to loan money to OSM. As Judge Fulton stated in his Opinion in this case on June 1, 2020, the very terms of § 523(a)(2)(A), exempts debts from discharge if they were obtained by fraudulent means, "other than a statement respecting the debtor's or an insider's financial condition."

  The Plaintiffs' trial brief is woefully unspecific as to the allegations of the Defendant's wrongdoing under each Code section cited. As to § 523(a)(2)(A), other than to state Debtor "fraudulently induced the Plaintiff to loan money to the Defendant and/or become indebted to the Defendant for more than $450,000.00", Plaintiffs complain that Debtor did not let them know that OSM had not been paying rent or that OSM was in debt of about $365,699.00 when they loaned OSM $40,000.00. Plaintiffs stated they were not aware of other parties that had loaned the Defendant money. Plaintiffs contend they had "no way to know what the Defendant was up to" because Tavadia was living in Florida. Again, all of these allegations pertain to OSM's financial condition. Such allegations are specifically exempted from nondischargeability by the very terms of § 523(a)(2)(A).

  Furthermore, this Court agrees with Judge Fulton's analysis in his June 1, 2020 Memorandum Opinion that Tavadia initially loaned OSM money based upon his friendship with Mitchell, rather than based upon misinformation provided by her. There is no evidence that Tavadia ever asked to inspect the company's financial data or undertook any other due diligence prior to loaning money to OSM, other than possibly the $250,000.00 loan, which the Court of Appeals determined was induced by Debtor's misleading documents. However, to the extent the $250,000.00

loan was based on Debtor's misrepresentations of her financial condition, § 523(a)(2)(A) does not apply.

As to Plaintiff's claims of forgery of Tavadia's name on the Fundworks, LLC application and guaranty, it is clear that Debtor signed Tavadia's name on the application. At paragraphs 33 and 34 of her Affidavit, Debtor specifically stated that Tavadia was at sea at the time and she verbally spoke with him about the loan and he verbally authorized her to execute the documentation and sign his name. Tavadia, however, in his Affidavit at paragraph 29 states that he found out that Debtor had forged his signature on the Fundworks' loan after the fact. The Court cannot make a determination on this claim since both parties dispute the veracity of the other on this point. Apparently, however, no claim has been made against the Plaintiffs for payment of the Fundworks' loan, nor for that matter, has any claim been made against the Debtor for payment of the Fundworks' loan. Fundworks has not asserted a nondischargeability claim against the Debtor. Without any harm shown to the Plaintiffs on this debt, there is no reason to declare that debt nondischargeable under this claim.

(B) <u>Nondischargeability Claim Under 11 U.S.C. § 523(a)(2)(B)</u>.

In Count II of the Complaint, Plaintiffs assert claims for nondischargeability under 11 U.S.C. § 523(a)(2)(B). Under this Section of the Bankruptcy Code, the issues involved are whether Debtor received "money, property, [or] services . . . by . . . use of a statement in writing: (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." *In re Calton Mark Vol1berg*, 2017 WL 2787600 (Bankr. E.D. Tenn. 2017). There is no evidence that Plaintiffs relied on any false written statements of the Debtor respecting her financial condition in loaning money to the Debtor.

None of the elements needed to prove a claim under §523(a)(2)(B) have been asserted or proven by the Plaintiffs. In fact, the claim is not addressed in Plaintiffs' trial brief. There is no basis for the Court to enter judgment in favor of the Plaintiffs on this claim. Furthermore, none of the allegations of Count II of the Complaint concern allegations that Plaintiff made written statements regarding the Debtor or an insider's financial condition upon which they relied in making loans to OSM. Accordingly, the Court will enter judgment in favor of the Debtor on this claim.

(C) <u>Nondischargeability Claim Under 11 U.S.C. § 523(a)(4)</u>.

Plaintiffs claim that Debtor's debt should be excepted from discharge because she spent a significant portion of the loans from the Plaintiffs on her "lavish personal lifestyle." Plaintiffs contend that Debtor's actions amount to fraud and defalcation while acting in a fiduciary capacity. Plaintiffs also state these actions constitute embezzlement of OSM's assets and property. *See* Count III of Plaintiffs' Complaint.

Section 523(a)(4) of title 11 states as follows:

(a) a discharge under Section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual defendant from any debt –

    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

Again, Plaintiffs did not specifically address each claim of their Complaint or the legal basis for the claims in their trial brief. Instead, Plaintiffs have left it for the Court to sift through their factual allegations against the Debtor and fit them under each claim asserted in the Complaint. Here, the Court again refers to Judge Fulton's analysis of this claim in his Memorandum Opinion on Plaintiffs' Motion for Summary Judgment dated June 1, 2020.

Section 523(a)(4), lists three categories of debts that are not dischargeable in bankruptcy. These are (1) debts arising from fraud or defalcation while acting in a fiduciary capacity, (2) debts from the commission of embezzlement; and (3) debts from larceny. The Sixth Circuit construes the term "fiduciary capacity" under this section as requiring an "express trust" or a "technical trust." *In re Patel*, 565 F.3d 963, 968 (6th Cir. 2009). To meet the requirements of § 523(a)(4), the creditor must show (1) a pre-existing fiduciary relationship; (2) breach of that relationship; and (3) a subsequent and resultant loss. *In re Blaszak*, 397 F.3d 386, 390 (6th Cir. 2005). In order to establish that a debtor acted in a "fiduciary capacity," under the statute, the following elements must be proven to establish an express or technical trust under Kentucky law: (1) an express intent to create a trust; (2) an ascertainable res; (3) a sufficiently certain beneficiary; and (4) a trustee who administers the trust for the beneficiary. *In re Grant*, 325 B.R. 728, 734 (Bankr. W.D. Ky. 2005). None of these factors are present. There is no evidence of the establishment of an express or technical trust and the fiduciary capacity provision of the statute does not apply to this case.

As for the claim of embezzlement and larceny, neither of these claims apply. Embezzlement under § 523(a)(4), requires two elements. The first is that the debtor was lawfully entrusted with property, or property lawfully came into the hands of the debtor. The second is that the debtor fraudulently appropriated the property. *In re Grim*, 293 B.R. 156, 166 n.3 (Bankr. N.D. Ohio 2003) (citing *In re Davis*, 262 B.R. 663, 671) (Bankr. E.D. Va. 2001)). To prove the embezzlement claim, Plaintiffs had to show that the money loaned to Defendant was "entrusted" to her. The mere loaning or investing of funds with the debtor is generally insufficient to establish that funds were "entrusted" for purposes of establishing a claim under § 523(a)(4). *See e.g. In re Algire*, 430 B.R. 817, 822 (Bankr. S.D. Ohio 2010) (misuse of loaned funds did not support an embezzlement claim because

"at the time Plaintiff funded the loan, loan proceeds ceased being Plaintiff's property; rather at the moment the loan proceeds became [the Debtor's] property"); *In re Barbee*, 479 B.R. 193, 208 (Bankr. S.D. Ga. 2012) (same); *In re Clayton*, 198 B.R. 878, 885 (Bankr. E.D. Pa. 1996) (denying a claim for embezzlement by a creditor of a closely held corporation based on allegations that the debtor had misused funds from the corporation.)

Larceny is defined as fraudulent and wrongful taking of the property of another with intent to convert such property to the taker's use without consent of the owner. *In re Grim*, 293 B.R. at 166 n.3 (citing *In re Zanetti-Gierke*, 212 B.R. 375, 381 (Bankr. D. Kan. 1997). Here, there was no finding that the taking of the funds was unlawful from the outset. Any misconduct occurred after Plaintiffs loaned the money to Debtor. Therefore, there is no evidence to support the claim of larceny.

Plaintiffs failed to prove that the money loaned to OSM was "entrusted" to Debtor, or that the taking of the property was unlawful when it occurred. Thus, there is no basis for the claim of larceny or embezzlement. Additionally, there is no evidence of an express or technical trust and therefore no support for a claim of fraud or defalcation while acting in a fiduciary capacity. Accordingly, the Court must enter judgment in favor of the Debtor on Count III of the Complaint.

(D) Nondischargeability Claim Under 11 U.S.C. § 523(a)(6).

Plaintiffs last claim for nondischargeability is made under 11 U.S.C. § 523(a)(6). This section states:

> (b) a discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual defendant from any debt –
>
> > (6) for willful and malicious injury;

Section 523(a)(6) provides that a debt resulting from an injury must be both "willful" and "malicious" in order for the discharge exception to apply in the Sixth Circuit. *In re Berge*, 953 F.3d 907, 914 (6th Cir. 2020). A "willful" injury stems from the conduct by which a defendant intended "the consequences of an act not simply the act itself." *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998).

After the *Geiger* decision, the Sixth Circuit decided *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999), wherein the Court stated that a willful injury occurs when the defendant "desires to cause the consequences of his act, or . . . believes that the consequences are substantially certain to result from it." *Id.* This is a subjective standard. In other words, if the defendant did not intend the consequences or was not subjectively aware that the consequences were substantially certain to occur, the actions were not willful. *See In re Boland*, 596 B.R. 532, 545 (B.A.P. 6th Cir. 2019).

There simply is no evidence that the Debtor acted with intent to injure the Plaintiffs. The evidence before the Court demonstrates that Debtor believed each of the loans would help OSM become profitable. There is no evidence that Debtor intended to injure the Plaintiffs. The Plaintiffs' proof on claims under 11 U.S.C. § 523(a)(6) were lacking on the element of intent. It is for this reason that the Court must enter judgment in Debtor's favor on Count IV of the Complaint.

## **CONCLUSION**

For all of the above reasons, the Court will enter the accompanying Judgment in favor of the Debtor on all claims asserted against her by Plaintiffs in their Complaint to Determine Dischargeability of Debt against Debtor.

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SHERI A. MITCHELL | ) | CASE NO. 16-33067(1)(7) |
| | ) | |
| Debtor(s) | ) | |
| | ) | |
| TAVADIA ENTERPRISES, INC. | ) | |
| and BEHRAM TAVADIA | ) | |
| | ) | |
| Plaintiff(s) | ) | ADV. PRO. NO. 16-3075 |
| | ) | |
| v. | ) | |
| | ) | |
| SHERI A. MITCHELL | ) | |
| | ) | |
| Defendant(s) | ) | |

## JUDGMENT

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Judgment is entered in favor of the Defendant/Debtor Sheri A. Mitchell on all claims asserted against her by Plaintiffs Tavadia Enterprises, Inc. and Behram Tavadia in their Complaint to Determine Dischargeability of Debt herein.

This is a final and appealable Judgment. There is no just reason for delay.